**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**KINGDOMBUILDING LEADERSHIP, INC.,**

Plaintiff,

v.

**NORFOLK SOUTHERN RAILWAY COMPANY**
Serve: Corporation Service Company
100 Shockoe Slip Fl 2,
Richmond, Virginia, 23219

and

**NORFOLK SOUTHERN CORPORATION**
Serve: Corporation Service Company
100 Shockoe Slip Fl 2,
Richmond, Virginia, 23219

Defendants.

**Civil Action No.: 2:26-cv-1001**
**JURY TRIAL DEMANDED**

# COMPLAINT

Plaintiff KingdomBuilding Leadership, Inc., for its Complaint against Defendants Norfolk Southern Railway Company and Norfolk Southern Corporation (both collectively "NS"), alleges as follows:

## Substance of the Action

1. This is an action at law and in equity for copyright infringement under the Copyright Act of 1976, 17 U.S.C. §§ 101 et seq., and for breach of contract under the law(s) of the Commonwealth of Virginia. This action principally arises by virtue of NS' unauthorized

reproduction, use, and distribution of Plaintiff's copyrighted and proprietary materials and the creation, distribution, and use of derivative works based thereon. Plaintiff seeks, *inter alia*, injunctive relief and recovery of its monetary damages.

**Jurisdiction and Venue**

2. This Court has subject matter over the claims arising out of the Copyright Act of 1976 set forth herein under 28 U.S.C. §§ 1331 and 1338(a). This Court has supplemental and related claim jurisdiction over the Virginia state law claim pursuant to 28 U.S.C. § 1367. Further, this Court has jurisdiction over the state law claim pursuant to 28 U.S. Code § 1332 as the dispute involves citizens of a State and a citizen of a foreign state and the matter in controversy exceeds the sum or value of $75,000.
3. This Court has personal jurisdiction over NS because both defendants had and have systemic and continuous contacts with the Commonwealth of Virginia and transact substantial business within this state.
4. This Court also has personal jurisdiction over NS as the parties entered into multiple written agreements (collectively "CSAs") in which NS expressly consented to personal jurisdiction in U.S. District Court for the Eastern District of Virginia.
5. Venue is proper in this Court as this Court has personal jurisdiction over the Defendant corporations and the Defendants are deemed to reside in this judicial district pursuant to 28 U.S.C. § 1391(b)(1). Moreover, venue is also proper in this district as the parties expressly agreed in writing that any action related to the CSAs or any transaction involving the CSAs shall be brought exclusively in either the state court in the City of Norfolk or the U.S. District Court for the Eastern District of Virginia.

## Parties

6. Plaintiff KingdomBuilding Leadership, Inc. ("KBL") is a corporation organized and existing under the laws of the province of Alberta, Canada with a principle place of business in Edmonton, Canada.

7. Defendant Norfolk Southern Corporation ("NS Corp"), is a corporation organized and existing under the laws of the State of Atlanta. NS Corp. is registered to do business in the Commonwealth of Virginia. NS Corp. owns, maintains, and/or operates a railway in Virginia.

8. Defendant Norfolk Southern Railway Company ("NSRC") is a corporation organized and existing under the laws of the State of Atlanta. NSRC is registered to do business in the Commonwealth of Virginia. Upon information and belief, NSRC is a wholly owned subsidiary of NS Corp. and owns, maintains, and/or operates a railway within the Commonwealth of Virginia.

## Facts

### Overview

9. KBL has been providing leadership & organizational development services to businesses in North America for over ten years. KBL leverages its considerable experience and proprietary methodologies and materials to deliver tools, assessments, training, coaching and advice to businesses of all sizes in order to provide highly effective and innovative solutions to achieve clients' goals.

10. Pauline Lipkewich ("Lipkewich") is, and has at all pertinent times herein, an officer and director of KBL. Lipkewich's experience in the area of leadership & development spans decades and includes prior experience working with railroad companies other than NS.

11. Prior to the events leading to the claims herein, KBL and/or Lipkewich on behalf of KBL had prepared, authored, and created various materials, including the work entitled ""KBL Candor & The Influential Leadership Framework", to assist in the provision of KBL services ("Pre-Existing Proprietary Materials").
12. These materials are foreign works which qualify for automatic copyright protection in Canada.
13. Further, these materials fall within the scope of Canadian Copyright Reg. Nos. 1237337 and/or 1237336, collectively attached hereto as Exhibit A, and/or U.S. Copyright Reg. TX 9-624-759, attached hereto as Exhibit B. All of the foregoing registrations, and all right and interest therein, are owned by KBL.

Engagement by NS

14. In April 2024, KBL was retained by NS to provide railroad operating consulting services in relation to implementing a transformation project for NS' safety training programs.
15. More specifically, KBL was initially retained to provide an Operations Strength-Weakness Opportunity-Threat (SWOT) analysis, as well as provide leadership training and professional development services; these were to be integrated into a plan provided by KBL to improve operational safety and performance at NS.
16. In furtherance of such engagement, NSRC, on its own behalf and on behalf of NS Corp., entered into a first Consulting Services Agreement dated April 12, 2024 along with a corresponding Statement of Work (collectively "Agreement") with KBL.
17. After a successful initial engagement, KBL and NS subsequently entered into six (6) additional Statements of Work (Nos. 03-08) ("Agreement SOWs") for the provision of services related to NS' safety training programs.

18. The KBL services under these agreements included adapting the Pre-Existing Proprietary Materials and associated tools for specific NS programs and participants. Ultimately, KBL incorporated various KBL materials, including those entitled Candor, Committed Leadership, Speak Up Culture, and Conversation Planner, into the provision of its services to NS

19. This resulted in the creation of additional works ("KBL Materials") which were also subject to automatic protection under the Copyright Laws of Canada and, further, were substantially identical to the Pre-Existing Proprietary Materials.

20. All or a portion of the KBL Materials were first published in the United States and, therefore, were also subject to copyright protection in the U.S.

21. The KBL materials were subsequently displayed, distributed, and used in furtherance of the services provided under the Agreement and the Agreement SOWs.

22. The KBL Materials reflect a distinctive synthesis of principles, terminology, and sequencing developed through extensive research and experience. The KBL Materials are original works of authorship and/or protectable compilations of materials.

23. All KBL Materials included a complete and proper copyright notice identifying KBL as the copyright holder.

24. KBL's contributions to NS' safety training programs were highly successful and yielded positive increases in safety metrics for NS.

25. The Agreement and each of the Agreement SOWs included the following provision:

> *Materials: Materials are copyrighted. To warranty and maintain Intellectual Property responsibilities reproduction of any portion of Participant Materials, for any purpose, is strictly prohibited unless specified in the materials or in writing by a KBL authorized representative. The course and its materials may not be utilized, sold, transferred, or exploited in any way by CLIENT or its*

*employees. For avoidance of doubt, materials delivered by Provider do not constitute a "work for hire deliverable" and thus, remain the sole property of KBL.*

26. KBL further offered NS a program "(Trainer Program") by which NS personnel would, under certain conditions, be able to utilize certain KBL Materials for internal education and presentations.

27. In furtherance of the Trainer Program, each NS participant was required to execute a Trainer Agreement.

28. Each Trainer Agreement included the following provision:

*6. Intellectual Property:*

*a. "KBL Candor," "Aligning the Stars," and any/all derivatives and all common law, statutory, and regulatory rights associated with such Trainings and materials attendant with each training (hereinafter "KingdomBuilding Leadership, Inc. Proprietary Property") include, but are not limited to, the content, the words, printed materials, technology, websites, databases, images, design, and video segments contained therein using the materials attendant with each Course. All the KingdomBuilding Leadership, Inc. proprietary property and all intellectual property of any kind associated therewith, arising therefrom, and relating thereto, are the sole property of KingdomBuilding Leadership, Inc.*

…………………………………………….

*e. Any modifications to the Designated Course or any of its related materials or modifications to any KingdomBuilding Leadership, Inc. Proprietary Property by the Trainer must receive written approval in advance from KingdomBuilding Leadership, Inc.. Any such modifications or derivations will be the sole and exclusive property of KingdomBuilding Leadership, Inc.*

29. Each Trainer Agreement also required that (i) each person attending a training session by an NS trainer must possess an "original and purchased copy" of the course materials purchased from KingdomBuilding Leadership and (ii) course materials may not be copied or modified. Multiple NS employees executed the Trainer Agreements.

<u>Commencement of Infringement</u>

30. In December 2024, KBL became aware that NS was distributing KBL Materials without authorization. KBL subsequently learned that NS was creating derivative works from the KBL Materials.

31. KBL immediately raised its concerns with NS over NS' unauthorized distribution and use of the KBL materials and the parties began discussing the matter.

32. In January of 2025, NS indicated, through its Vice-President of Enterprise Resources, that it wished to have exclusivity and full use of the KBL Materials moving forward, or, at the very least, a royalty-free, worldwide, irrevocable license, in order to freely use the KBL Materials on an on-going basis from that point forward. KBL and NS subsequently entered into negotiations for the foregoing transfer. After failing to reach an agreement as to the value or terms of such a transaction/transfer, KBL requested that NS delete/destroy all digital copies of KBL Materials.

33. Subsequently, on or about April 8, 2025, KBL and NSRC entered into Services Agreement- "SOW-009" ("009 Agreement").

34. The 009 Agreement provided solely for certain consulting services, namely, the training of individuals under the Trainer Program. In return for these services, NSRC agreed to compensate KBL as set forth in the agreement.

35. Section No. 9 of the 009 Agreement provided that NSRC could terminate the agreement upon sixty (60) days prior written notice.

36. The 009 Agreement also expressly confirmed that KBL retained "all rights, title and interest in and to any and all materials that Contractor has delivered to Company under

prior agreements including, without limitation, Contractor's Committed Leadership (aka "Influence Planner") and Candor Program (aka "Conversation Planner") Materials."

37. KBL commenced services under the 009 Agreement, as required.

38. While still performing under the 009 Agreement, KBL reiterated its demand that NS cease use of the KBL Materials and any derivative materials created from the KBL Materials.

39. In response to KBL's repeated assertions of infringement and requests for cessation of use, NS Deputy General Counsel responded by stating that "Norfolk Southern carefully reviewed both the Norfolk Southern Materials and the KBL Materials and have found no infringement by Norfolk Southern of the KBL Materials." Counsel went on to assert that KBL had no enforceable intellectual property rights in any of the alleged similarities between the Norfolk Southern Materials and the KBL Materials.

40. Ultimately, on October 31, 2025 ("Notification Date"), NSRC indicated that it was terminating the 009 Agreement pursuant to Section 9, providing a contract termination date of December 30, 2025.

41. NSRC failed to make any additional payments after the Notification Date and failed to pay KBL for the sixty-day period before termination was effective.

<u>Ongoing Infringement</u>

42. Upon information and belief, NS continues to display, use, and distribute materials which are derivative works of the KBL Materials.

43. Upon information and belief, NS infringing acts involving KBL Materials and derivative materials include, but are not limited to:

(a) distribution of such materials to NS' Safety Camp Participants in 2025;

(b) distribution of such materials via the Norfolk Southern Training Center;

(c) distribution of such materials to participants of Safety Boot Camps and Safety Walkabouts;

(d) distribution of such materials via group email without authorization in January 2025;

(e) distribution of such materials to third parties without authorization throughout 2025, including distribution to Labor Leaders, non-NS guests of Safety Camps, Port Authorities and/or Shortline or Regional railroads; and,

(f) distribution of The Way We Excel materials including KBL's feedback model without authorization throughout 2025.

44. NS's acts of unauthorized copying, display, distribution, and use of the KBL materials were a breach of the Agreement and the Agreement SOWs.

**Count I**
**Copyright Infringement in Violation of 17 U.S.C. §106**
**(All Defendants)**

45. Plaintiff incorporates, repeats and realleges Paragraphs 1 through 44 of this Complaint as if fully set forth herein.

46. At all time relevant hereto, Plaintiff KBL has been the author and sole owner of all right, title and interest in the KBL Materials.

47. The KBL Materials satisfy all the requisite elements of copyrightable material and are thus copyrightable under the Copyright Laws of the United States and Canada.

48. The KBL Materials are entitled to and enjoy automatic copyright protection under the laws of Canada.

49. Further, Plaintiff is the owner of two Canadian Copyright Registrations which cover or include the essence of the KBL Materials.

50. Pursuant to the Berne Convention for the Protection of Literary and Artistic Works, Plaintiff is entitled to protection for infringement of its works in the U.S. under the Copyright Laws of the United States.

51. The KBL Materials also fall within the scope of U.S. Copyright Reg. Nos. TX 9-634-099 and/or TX 9-624-759 collectively attached hereto as Exhibit B ("U.S. Registrations"). Plaintiff is the owner of, and holds all right and interest in, the U.S. Registrations which are currently valid and in effect.

52. Defendants have infringed KBL's copyrights by reproducing, displaying, distributing and/or creating derivative works (from) the KBL Materials.

53. Defendants' acts of infringement were done without the consent, approval, or license of KBL and carried out in violation of Plaintiff's copyrights and other proprietary rights in the KBL Materials. In fact, not only did KBL not authorize the use of its materials or the creation of derivative works, KBL expressly and repeatedly requested that NS cease all use of the KBL Materials or, alternatively, appropriately compensate KBL for the use.

54. Defendants knew of Plaintiff's rights in the KBL Materials. Thus Defendants' copying, distribution, display and use, and the creation of derivative works therefrom, constitutes willful and deliberate infringement.

55. Despite knowledge of Plaintiff's rights and repeated demands for cessation, Defendants continue to infringe KBL's copyrights in the KBL Materials.

56. Defendants' conduct is a violation of Plaintiff's exclusive rights under 17 U.S.C. §106(1-5) and constitutes infringement of Plaintiff's copyrights.

57. As a direct and proximate result of Defendants' actions, Plaintiff has lost substantial profit and revenues and has sustained, and continues to sustain, irreparable injury.

**Count II**
**Copyright Infringement in Violation of 17 U.S.C. §106**
**(Norfolk Southern Corporation)**

58. Plaintiff incorporates, repeats and realleges Paragraphs 1 through 57 of this Complaint as if fully set forth herein.

59. At all times relevant hereto, Plaintiff KBL has been the author and sole owner of all right, title and interest in the KBL Materials.

60. The KBL Materials satisfy all the requisite elements of copyrightable material and are thus copyrightable under the Copyright Laws of the United States and Canada.

61. The KBL Materials are entitled to and enjoy automatic copyright protection under the laws of Canada.

62. Further, Plaintiff is the owner of two Canadian Copyright Registrations which cover or include the essence of KBL Materials.

63. Pursuant to the Berne Convention for the Protection of Literary and Artistic Works, Plaintiff is entitled to protection for infringement of its works in the U.S. under the Copyright Laws of the United States.

64. The KBL Materials also fall within the scope of U.S. Copyright Reg. Nos. TX 9-634-099 and/or TX 9-624-759, collectively attached hereto as Exhibit B ("U.S. Registrations"). Plaintiff is the owner of, and holds all right and interest in, the U.S. Registrations which are currently valid and in effect.

65. Defendant NSRC has infringed KBL's copyrights by reproducing, displaying, distributing and/or creating derivative works (from) the KBL Materials.

66. Defendant NSRC's acts of infringement were done without the consent, approval, or license of KBL and carried out in violation of Plaintiff's copyrights and other proprietary rights in the KBL Materials. In fact, not only did KBL not authorize the use of its materials or the creation of derivative works, KBL expressly and repeatedly requested that NS cease all use of the KBL Materials or, alternatively, appropriately compensate KBL for the use.

67. Upon information and belief, Defendant NS Corp. has a majority ownership interest in NSRC.

68. Defendant NS Corp. has the right and ability to supervise and control the conduct and actions, including all infringing conduct, of NSRC.

69. Defendant NS Corp. has a direct financial interest in the infringement set forth herein as, *inter alia*, the use of the KBL Materials are/were a significant part of the safety programs which are used in conjunction with NS Corp.'s national railway operations.

70. Defendant NS Corp. was directly informed of the ongoing infringement but declined to exercise any control to stop the infringing activity.

71. Defendant NSRC's conduct is a violation of Plaintiff's exclusive rights under 17 U.S.C. §106(1-5) and constitutes infringement of Plaintiff's copyrights.

72. Defendant NS Corp. is vicariously liable for NSRC's infringing conduct.

73. As a direct and proximate result of Defendant NS Corp.'s actions, Plaintiff has lost substantial profit and revenues and has sustained, and continues to sustain, irreparable injury.

**Count III**
**Breach of Contract**
**(Norfolk Southern Railway Company)**

74. Plaintiff incorporates, repeats and realleges Paragraph Nos. 1 through 73 as if fully set forth herein.

75. Plaintiff KBL and Defendant NSRC entered into a written Services Agreement- "SOW-009" ("009 Agreement"). The 009 Agreement was in full force and effect at all times pertinent herein.

76. KBL performed as required by the agreement.

77. The 009 Agreement provided that NS was to compensate KBL for KBL's services.

78. NSRC breached the 009 Agreement by failing to make the required payments thereunder for the period consisting of November and December 2025.

79. As a direct result of NSRC's breach of the 009 Agreement, Plaintiff was deprived of compensation to which it was entitled, and, as a result, KBL is now entitled to recover monetary damages.

80. Accordingly, NSRC owes KBL the outstanding compensation set out in the 009 Agreement.

**PRAYER FOR RELIEF**

WHEREFORE, KingdomBuilding Leadership, Inc., respectfully requests judgment as follows:

A. Issuance of a temporary and preliminary and permanent injunction restraining and enjoining further infringement by Defendants Norfolk Southern Railway Company and Norfolk Southern Corporation and all those in active concert and participation with them from infringing and/or violating Plaintiff's copyright(s) and other proprietary rights in the KBL Materials,

including, but not limited to, enjoining Defendants from imitating, copying, reproducing, displaying or distributing the KBL Materials, or any substantial similar works or materials, or creating derivative works from all or a portion of the KBL Materials;

B. The seizure, impoundment and destruction of all unauthorized and unlawful copies and/or derivative works of or from the KBL Materials;

C. An award of monetary damages pursuant to 17 U.S.C. §504(b) and an award of monetary damages for breach of contract;

D. An award of Plaintiff's fees, costs, and expenses in this matter, including reasonable attorneys' fees and expenses associated with this action pursuant to 17 U.S. Code § 505; and,

E. Such other and further relief as this Court deems just and proper.

**Plaintiff Requests a Trial by Jury**

**KINGDOMBUILDING LEADERSHIP, INC.,**

**/s/ Anthony Tacconi**
**By**________________________________
Counsel

Anthony Tacconi, Esquire (VSB No. 47459)
Robert F. Donnelly, Esquire (VSB No. 29168)
GOODMAN ALLEN DONNELLY PLLC
4050 Innslake Drive, Suite 200
Glen Allen, Virginia 23060
Telephone: 804.565.5957
Facsimile: 804.346.5954
atacconi@goodmanallen.com
*Attorneys for Plaintiff KingdomBuilding Leadership, Inc.*